Slip Op. 11-48

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ | |
| | : |
| SHANGHAI LIAN LI PAPER | : |
| PRODUCTS CO., LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| ASSOCIATION OF AMERICAN | : |
| SCHOOL PAPER SUPPLIERS, | : |
| | : |
| Defendant-Intervenor. | : |
| _____ | : |

Before:     WALLACH, Judge
Court No.:   09-00198

**PUBLIC VERSION**

[Commerce's Final Results of Redetermination Pursuant to Court Remand are AFFIRMED.]

Dated:          April 27, 2011

Dorsey & Whitney LLP (William E. Perry and Elizabeth Crouse) for Plaintiff Shanghai Lian Li Paper Products Co., Ltd.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael D. Panzera); and Joanna Theiss, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

Wiley Rein LLP (Alan H. Price, Timothy C. Brightbill, and Maureen E. Thorson) for Defendant-Intervenor Association of American School Paper Suppliers.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

This action comes before the court on the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Remand ("Remand Results"). Commerce issued these Remand Results after the court granted the request of Defendant United States ("Defendant") for remand of Certain Lined Paper Products from the People's Republic of China: Notice of Final Results of the Antidumping Duty Administrative Review, 74 Fed. Reg. 17,160 (April 14, 2009) ("Final Results"), as amended, Notice of Amended Final Results of the Antidumping Duty Administrative Review of Certain Lined Paper Products from the People's Republic of China, 74 Fed. Reg. 68,036 (December 22, 2009) ("Amended Results"). See April 4, 2010 Remand Order (Doc. No. 46).  During remand Commerce determined that the antidumping duty rate of Plaintiff Shanghai Lian Li Paper Products Co., Ltd. ("Lian Li" or "Plaintiff") should be recalculated. Remand Results at 2.  Defendant-Intervenor Association of American School Paper Suppliers ("Defendant-Intervenor" or "AASPS") now challenges Commerce's recalculation. See Defendant-Intervenor's Comments on Final Results of Redetermination Pursuant to Court Order ("Defendant-Intervenor's Comments"); Reply Comments of the Association of American School Paper Suppliers ("Defendant-Intervenor's Reply").  This court has jurisdiction pursuant 28 U.S.C. § 1581(c).  Commerce's redetermination is supported by substantial evidence and in accordance with law.

## II
## BACKGROUND

On April 14, 2009, Commerce issued final results of the first administrative review of the antidumping duty order on certain lined paper products from the People's Republic of China ("PRC"), covering entries made from April 17, 2006 to August 31, 2007. See Final Results, 74 Fed. Reg. 17,160; Amended Results, 74 Fed. Reg. 68,036.  On April 14, 2009, Lian Li "timely filed its ministerial error allegations, pursuant to 19 C.F.R. § 351.224(c)," two of which Commerce determined to be ministerial errors and corrected in its Amended Results. Amended Results, 74 Fed. Reg. at 68,036-37.[1]  Commerce determined the other two alleged errors, regarding Lian Li's factors of production ("FOP") database used to calculate normal value and inland freight value, not to be ministerial and thereafter requested a voluntary remand to recalculate these values. Id. at 68,037; Defendant's Amended Consent Motion for Voluntary Remand (April 12, 2010), Doc. No. 44, granted by April 15, 2010 Order (Doc. No. 46). Commerce determined during remand to "recalculate[] Lian Li's margin by utilizing the electronic version of the October 2008 FOP database" and to "recalculate[] Lian Li's inland freight" values. Remand Results at 2.[2]  Plaintiff supports Commerce's redetermination. See Plaintiff's Response to Comments on Final Results of Redetermination Pursuant to Court Order ("Plaintiff's Response").  Defendant-Intervenor challenges the recalculation of Lian Li's inland freight values. See Defendant-Intervenor's Comments; Defendant-Intervenor's Reply.

---

[1] "Specifically, the Department inadvertently included a factor for uncoated paper board . . . which resulted in double counting the input value of black paper board.  Additionally, the Department inadvertently used grey/white paper board's input values for grey paper board." Amended Results 74 Fed. Reg. at 68,037.

[2] Defendant-Intervenor does not challenge Commerce's use of Lian Li's FOP database. See Remand Results at 8 ("No parties commented on the Department's recalculation using the electronic version of the October 2008 FOP database in the draft remand.  For the final results, we have continued to use the electronic version of the October 2008 FOP database."); Defendant-Intervenor's Comments on Final Results of Redetermination Pursuant to Court Order ("Defendant-Intervenor's Comments") at 2 ("AASPS argued that the record did not support Commerce's recalculation of inland freight . . . ."); see generally Defendant-Intervenor's Comments; Defendant-Intervenor's Reply.

**III**
**STANDARD OF REVIEW**

The court will hold unlawful a determination by Commerce resulting from an administrative review of an antidumping duty order if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); <u>see</u> 19 U.S.C. § 1516a(a)(2)(B)(iii).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Aimcor v. United States</u>, 154 F.3d 1375, 1378 (Fed. Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. United States</u>, 750 F.2d 927, 933 (Fed. Cir. 1984)).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).

This inquiry must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" <u>Huaiyin Foreign Trade Corp. (30) v. United States</u>, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting <u>Atl. Sugar, Ltd. v. United States</u>, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  While contradictory evidence is considered, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." <u>Cleo Inc. v. United States</u>, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 487–88, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).

**IV**

**DISCUSSION**

Defendant-Intervenor makes two arguments supporting its contention that "Commerce erred in recalculating Lian Li's inland freight on a weight basis": (1) Defendant-Intervenor had no opportunity to comment on the yield loss explanation provided by Lian Li and (2) Commerce relied on "clearly erroneous data" in its calculation. Defendant-Intervenor's Comments at 3-6. Defendant-Intervenor's arguments do not prevail.

**A**

**Legal Framework**

Commerce is responsible for determining if goods are sold or likely to be sold at less than fair value ("LTFV"), i.e., if dumping is occurring. 19 U.S.C. §§ 1675(a), 1677(1), (34). Antidumping duties are assessed if Commerce determines the normal value ("NV")[3] exceeds the export price ("EP")[4] or the constructed export price ("CEP");[5] if so, Commerce levies antidumping duties in the amount of the difference between the two. 19 U.S.C. §§ 1675(a)(1), 1677(35)(A).

In antidumping duty proceedings concerning merchandise from the PRC, Commerce determines the normal value of that merchandise through an approach specific to non-market economy ("NME") countries. See 19 U.S.C. § 1677b(c); 19 C.F.R. § 351.408; Department of

---

[3] Normal value is the price charged for the subject merchandise in its home market, the price charged in an appropriate third country market, or the cost of production of the subject merchandise. 19 U.S.C. § 1677b(a)(1)(B)(i)-(ii), (a)(4).

[4] Export price "means the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States." 19 U.S.C. § 1677a(a).

[5] Constructed export price "means the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter." 19 U.S.C. § 1677a(b).

Commerce, Antidumping Manual (October 13, 2009) ("AD Manual"), Chap. 10; Certain Lined

Paper Products from the People's Republic of China: Notice of Preliminary Results of the

Antidumping Duty Administrative Review, 73 Fed. Reg. 58,540, 58,542 (October 7, 2008).  This

approach uses surrogate data from a comparable market economy country to value the FOP

(including materials, labor, and energy) and other costs of production (including factory

overhead; selling, general, and administrative expenses; and profit) for the merchandise. AD

Manual, Chap. 10 at 14-21; 19 C.F.R. § 351.408(c)(4).


**B**
**Commerce's Recalculation Of Lian Li's Inland Freight Values Is Supported By Substantial Evidence**

In its redetermination, Commerce sought information from Lian Li regarding the gross

weight of its imports in order to recalculate Lian Li's inland freight expense based on weight

instead of based on the number of pieces of paper. Remand Results at 8.[6]  After AASPS

identified discrepancies in the weights reported by Lian Li, Lian Li "assert[ed] that the difference

between the two weights was due to yield loss, i.e., the portion of the purchased material input

that was used in the production process, but was not included in the finished product." Id. at 9.

Commerce requested additional information to explain these discrepancies, but Lian Li was

unable to provide Commerce with a "yield loss calculation for each of the products" because

Lian Li does "not track this information consistently on a product-specific basis." Id.

AASPS first argues that "[a]lthough [Commerce] accepted Lian Li's claim that the

differences in reported weight and FOP weight were attributable to yield loss, Commerce did not

---

[6] During remand, Lian Li provided Commerce "with the gross weight for its subject merchandise, which is the net weight plus packing weight," in order for Commerce to "recalculate[] Lian Li's freight cost by taking the freight distance and multiplying by the freight surrogate values and by the gross weight (i.e., net weight plus carton weight and tape weight)." Remand Results at 8.

provide the AASPS with any opportunity to provide rebuttal information on the question of whether the claimed yield losses were realistic." Defendant-Intervenor's Comments at 3-4. AASPS asserts that Commerce "did not take into account the fact that the issue of yield loss was raised by Lian Li well after the period for submitting new factual information had passed. Commerce's regulations therefore precluded the AASPS from submitting any evidence to contradict or rebut Lian Li's assertion and claims that yield loss can explain the significant differences in its reported and calculated weights." Id. at 5.

AASPS's argument is unpersuasive; as pointed out by Defendant, "at no time did AASPS request, or Commerce deny, the opportunity to submit comments regarding Lian Li's explanation for the weight differences." Defendant's Response at 7.  Additionally, Defendant notes that "[b]ecause Commerce requested the information, Lian Li's submission of information in response was not untimely filed." Id. at 8 (citing 19 C.F.R. § 351.301(c)(2) ("Notwithstanding paragraph (b) of this section, the Secretary may request any person to submit factual information at any time during a proceeding.")).  Finally, as pointed out by Lian Li, the information submitted "was categorically not new factual information, but only an explanation of the information already supplied to the Department and on the record." Plaintiff's Response at 5.[7]

AASPS next asserts "Commerce's remand results do not correct for certain reporting errors to which Lian Li admitted," pointing specifically to "three of the 44 [control numbers]

---

[7] AASPS also implies an underlying argument that there is a "lack of evidence to support Lian Li's contention that the differences in its reported production and net FOP weights is due to yield loss." Defendant-Intervenor's Reply at 4.  AASPS asserts that "[w]hile certain FOP weights may have been confirmed at verification, the explanation for the differences in reported gross and net weights has been taken on faith.  Indeed the size of the differences – more than [[ a specified percentage ]] for one [control number] – renders the yield loss explanation unrealistic and unpersuasive on its face." Id. at 6.  AASPS's assertions are without merit.  AASPS offers no evidence to support its assertions. See generally Defendant-Intervenor's Comments; Defendant-Intervenor's Reply.  Commerce explained that "in many non-market economy cases, where [Commerce] evaluate[s] production costs and factors of production, there is some kind of yield loss." Remand Results at 9.  Commerce notes also that the weights were verified and that Lian Li "certified that the difference is explained by yield loss, which is not tracked in the ordinary course of business." Id. at 10.

identified by Lian Li [that] correspond to reported net weights that exceed or are nearly identical to the calculated FOP weights." Defendant-Intervenor's Comments at 6.  AASPS states "the logical conclusion [regarding the presence of these errors] is that Lian Li underreported the consumption rates for material inputs for these [control numbers]." Id.  AASPS also states "Commerce's argument that its failure to notice the errors at verification amounts to substantial evidence supporting the use of the errors is simply bizarre." Defendant-Intervenor's Reply at 4.

Commerce admits that it was aware "Lian Li identified three [control numbers] with weights which were very similar [i.e., net weight and FOP weight], which [Lian Li explained] as clerical errors." Remand Results at 9.  Defendant summarizes "Commerce's use of over-reported net weights for three products is supported by substantial evidence and is reasonable given that: (1) during the remand proceeding, Lian Li informed Commerce that the three products had been incorrectly weighed; and (2) the record lacked better information; and (3) the error was against Lian Li's interests." Defendant's Response at 13.[8]  Defendant also points out "AASPS fails to provide any record evidence to support its contention that 'the logical conclusion is that Lian Li under-reported the consumption rates for material inputs in these [control numbers],'" arguing "it defies logic that Lian Li would under-report consumption of factors, because such under-reporting is adverse to Lian Li's interests in the proceedings." Id. at 11.

Commerce's determination to use the net weights for three products in its calculation of inland freight is supported by substantial evidence, and AASPS's analysis is flawed.  First, Commerce did not state or imply that "its failure to notice the errors at verification amounts to

---

[8] During remand, Lian Li stated that with regards to the three products at issue, the weights were overstated "because [Lian Li's] staff made clerical errors when recording the manually weighed weights of these products. These errors, however, are against [Lian Li's] favor because it over reported net weights in the calculation of freight cost." Letter from William E. Perry, Dorsey & Whitney LLP, to Gary F. Locke, Secretary of Commerce, Re: Court of International Trade Remand, 09-00198; Shanghai Lian Li Paper Products Co., Ltd. v. United States and Association of American School Paper Suppliers: Response to Commerce Department August 2nd Letter Regarding Difference in Weights (August 5, 2010), Public Record ("PR") 8 at 5.

substantial evidence supporting the use of the errors," Defendant-Intervenor's Reply at 4; instead, "Commerce determined to use these weights . . . because there was no information in the [record] regarding the correct weight for these three products, and, as Commerce explained, the clerical errors in the reported weights were for a total of three out of 44 individual [control numbers], and the errors are minor . . . ." Defendant's Response at 10-11.

Second, AASPS appears to draw a number of unsupported conclusions.  AASPS asserts that "[t]he underreporting of factors of production does, in fact, benefit Lian Li because the factors of production represent the components that give rise to the normal value.  Additional product consumption means higher normal value, and a higher normal value yields a higher dumping margin." Defendant-Intervenor's Reply at 5.[9]  There are multiple problems with AASPS's position.  As pointed out by Defendant, "for these three products, the net weights are higher . . . .  A higher net weight results in a higher gross weight, and a higher gross weight results in a higher freight cost.  A respondent would have no interest in inflating a freight cost, because it could result in a higher normal value, thus leading to a greater dumping margin (the difference by which normal value exceeds export price)." Id. at 11-12.  With regards to AASPS's argument that "the logical conclusion [regarding the presence of these errors] is that Lian Li underreported the consumption rates for material inputs for these [control numbers]," AASPS provides no evidence that Lian Li under-reported consumption rates. Defendant-Intervenor's Comments at 6; see Defendant's Response at 11 ("AASPS . . . fails to identify a particular factor that may have been under-reported such that only three out of 44 products would be affected.").

---

[9] AASPS's argument that "Lian Li should have discovered any such errors during its preparation for verification," Defendant-Intervenor's Comments at 6, is also without merit.  As pointed out by Defendant, "AASPS is correct that, as a general matter, a party may submit corrections to minor errors at the outset of verification . . . .  There is no basis for concluding, however, that Lian Li in fact had any basis for knowing the existence of these errors before verification." Defendant's Response at 11.

Finally, as pointed out by Plaintiff, "[t]he occurrence of a clerical error while undertaking one task does not logically lead to the conclusion that completely dissimilar clerical errors occurred while undertaking a completely dissimilar task." Plaintiff's Response at 6.[10]  Accordingly, Defendant-Intervenor's analysis fails to demonstrate any error by Commerce in law or in fact.

## V
## CONCLUSION

For the above stated reasons, Commerce's Final Results of Redetermination Pursuant to Court Remand are AFFIRMED.

__/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: April 27, 2011
       New York, New York

---

[10] With regards to AASPS's belief that Commerce should "resort to the facts available and/or adverse inferences," Defendant-Intervenor's Comments at 7, Defendant is correct that the record does not support this since "there is no indication that Lian Li misreported its FOP information" and since AASPS "does not specify . . . what FOP information is missing, or provide any evidence that Lian Li failed to cooperate by not acting to the best of its ability." Defendant's Response at 12 (citing 19 U.S.C. § 1677e(a) (If Commerce lacks necessary information or a party fails to cooperate, Commerce must resort to "facts otherwise available.") and 19 U.S.C. § 1677e(b) ("[I]n selecting from among the facts otherwise available," Commerce "may use an inference that is adverse to the interests of" a party that has failed to cooperate.)).

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ : | |
| SHANGHAI LIAN LI PAPER : | |
| PRODUCTS CO., LTD., : | |
| : | |
| Plaintiff, : | |
| : | Before:    WALLACH, Judge |
| v. : | Court No.:   09-00198 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| ASSOCIATION OF AMERICAN : | |
| SCHOOL PAPER SUPPLIERS, : | |
| : | |
| Defendant-Intervenor. : | |
| _____: | |

## <u>ORDER AND JUDGMENT</u>

This case having come before the court upon the Final Results of Redetermination Pursuant to Court Remand ("Remand Results") filed by the U.S. Department of Commerce ("Commerce"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and, after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED that Commerce's Remand Results are AFFIRMED; and it is further

ORDERED that each party shall review the court's Opinion in this matter and shall in writing on or before Wednesday, May 4, 2011 notify the court whether any information contained in the Opinion is confidential. If a party determines that information needs to be deleted in the public version of the Opinion to be issued thereafter, that party shall identify such information, request the deletion of such information, and propose alternate language to replace such information. If a party determines that no information needs to be deleted, that party shall so notify the court.


                                              __/s/ Evan J. Wallach____
Dated: April 27, 2011                         Evan J. Wallach, Judge
       New York, New York